## UNITED STATES COURT OF INTERNATIONAL TRADE
## NEW YORK, NEW YORK

BEFORE: UNASSIGNED

| | |
|---|---|
| ——————————————————————— )<br><br>CANADIAN SOLAR (USA) INC.; CANADIAN )<br>SOLAR SSES (US) INC.; CANADIAN SOLAR US )<br>MODULE MANUFACTURING CORPORATION; and )<br>CANADIAN SOLAR US CELL MANUFACTURING )<br>CORPORATION, )<br>  )<br>      Plaintiffs, )<br>  )<br>  v. )<br>  )<br>THE UNITED STATES OF AMERICA; UNITED )<br>STATES DEPARTMENT OF HOMELAND )<br>SECURITY; KRISTI NOEM, in her official )<br>capacity as Secretary of the Department of )<br>Homeland Security; U.S. CUSTOMS AND )<br>BORDER PROTECTION; RODNEY S. SCOTT, )<br>in his official capacity as Commissioner of U.S. )<br>Customs and Border Protection; OFFICE OF THE )<br>UNITED STATES TRADE REPRESENTATIVE; )<br>JAMIESON GREER, in his official capacity as )<br>United States Trade Representative; U. S. )<br>DEPARTMENT OF THE TREASURY; and )<br>SCOTT BESSENT, in his official capacity as )<br>Secretary of the Treasury, )<br>  )<br>      Defendants. )<br>——————————————————————— ) | Court No. 25-00732 |

## <u>COMPLAINT</u>

### INTRODUCTION

Plaintiffs Canadian Solar (USA) Inc.; Canadian Solar SSES (US) Inc.; Canadian Solar US

Module Manufacturing Corporation; and Canadian Solar US Cell Manufacturing Corporation

("Plaintiffs"), by and through counsel, allege and state as follows:

1.      Beginning in February 2025 and continuing thereafter, new substantial tariffs have been imposed on goods imported into the United States from nearly every foreign country, including multiple countries from which Plaintiffs source their imports.  These tariffs have been imposed under the asserted authority of the International Emergency Economic Powers Act ("IEEPA").  As a result, Plaintiffs have paid and continue to pay significant IEEPA tariffs on certain imported articles from a variety of countries.

2.      Both the United States Court of International Trade ("CIT") and the United States Court of Appeals for the Federal Circuit ("Federal Circuit") have held that IEEPA does not authorize the President to impose the challenged tariffs.  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) (ruling on two separate cases brought by VOS et al. and Oregon et al.); *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

3.      This action specifically contests Defendants' imposition of IEEPA tariffs on Plaintiffs' imported merchandise pursuant to the following Executive Orders, as amended (collectively referred to in this complaint as the "Challenged IEEPA Tariff Orders"):

(A)     Executive Order 14193 of February 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025), as amended;  1/

(B)     Executive Order 14195 of February 1, 2025, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025), as amended; 2/

(C)     Executive Order 14257 of April 2, 2025, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual

---

1/      *See* Exec. Order No. 14197, 90 Fed. Reg. 9,183 (Feb. 10, 2025); Exec. Order No. 14226, 90 Fed. Reg. 11,369 (Mar. 6, 2025); Exec. Order No. 14231, 90 Fed. Reg. 11,785 (Mar. 11, 2025); Exec. Order No. 14325, 90 Fed. Reg. 37,957 (Aug. 6, 2025).

2/      *See* Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025), as amended; 3/

(D) Executive Order 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 15, 2025); 4/

4. The President variously directed the Secretary of Commerce and the United States Trade Representative, in consultation with the Secretary of Homeland Security, acting through the Commissioner of U.S. Customs and Border Protection ("CBP") and the Chair of the United States International Trade Commission, to make modifications to the Harmonized Tariff Schedule of the United States ("HTSUS") to effectuate the Executive Orders, including adopting rules and regulations or other agency actions necessary to implement the order. 5/

5. The Challenged IEEPA Tariff Orders established in the Harmonized Tariff Schedule of United States ("HTSUS") added many new additional dutiable "secondary" subheading provisions under Subchapter III of Chapter 99 of the HTSUS including, but not limited to, subheadings 9903.01.01, 9903.01.03, 9903.01.04, 9903.01.10, 9903.01.11, 9903.01.14, 9903.01.20, 9903.01.24, 9903.01.25, 9903.01.26, 9903.01.27, 9903.01.31, 9903.01.32, 9903.01.33, 9903.01.49, 9903.01.54, 9903.01.55, 9903.01.58, 9903.01.63, 9903.01.72, 9903.01.77, 9903.01.84, 9903.02.05, 9903.02.09, 9903.02.11, 9903.02.14, 9903.02.17, 9903.02.20, 9903.02.26, 9903.02.27, 9903.02.31, 9903.02.33, 9903.02.39, 9903.02.47,

---

3/    *See* Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 11, 2025); Exec. Order No. 14259, 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14298, 90 Fed. Reg. 21,831 (May 21, 2025); Exec. Order No. 14326, 90 Fed. Reg. 37,963 (Aug. 6, 2025); Exec. Order No. 14334, 90 Fed. Reg. 39,305 (Aug. 14, 2025); Exec. Order No. 14358, 90 Fed. Reg. 50,729 (Nov. 7, 2025).

4/    Exec. Order No. 14316, 90 Fed. Reg. 30,823 (July 10, 2025).

5/    *See, e.g.,* Exec. Order 14193, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121, 9,123 (Feb. 7, 2025); Exec. Order No. 14257, 90 Fed. Reg. 15,041, 15,048 (Apr. 7, 2025); Exec. Order No. 14266, 90 Fed. Reg. 15,627 (Apr. 15, 2025).

9903.02.51,  9903.02.53,  9903.02.55,  9903.02.56,  9903.02.57,  9903.02.60,  9903.02.61,

9903.02.63, 9903.02.64, 9903.02.66, and 9903.02.69.

6.      Under direction of the Challenged IEEPA Tariff Orders, CBP also filed certain

*Federal Register* notices amending the HTSUS to reflect various new tariffs, among other

actions. 6/  CBP also issued certain Guidance through its Cargo Systems Messaging System

("CSMS") to inform importers of various tariff changes. 7/

7.      Through this court action, Plaintiffs ask this Court to reaffirm the previous holdings

of the CIT and the Federal Circuit in *V.O.S. Selections* that –  (A) Executive Order Nos. 14193, ,

14195, 14257, and 14266, and their respective amendments, all promulgated pursuant to IEEPA,

are "invalid as contrary to law," and (B) the collection of any IEEPA tariff under these Executive

Orders was likewise unlawful.  As such, the collection of any IEEPA tariffs collected under those

additional Executive Orders was also unlawful.

---

6/      *See, e.g.*, *Notice of Implementation of Additional Duties on Products of Canada Pursuant to the President's Executive Order 14193, Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 11,423 (U.S. Customs & Border Protection Mar. 6, 2025); *Amendment to Notice of Implementation of Additional Duties on Products of Canada Pursuant to the President's Executive Order 14193, Imposing Duties To Address the Flow of Illicit Drugs Across our Northern Border*, 90 Fed. Reg. 11,743 (U.S. Customs & Border Protection Mar. 11, 2025); *Notice of Implementation of Addressing Certain Tariffs on Imported Articles Pursuant to President's Executive Order 14289*, 90 Fed. Reg. 21,487 (U.S. Customs & Border Protection May 20, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14195, Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,426 (U.S. Customs & Border Protection Mar. 6, 2025); *Notice of Implementation of Addressing Additional Duties on Products of the People's Republic of China Pursuant to the President's Executive Order 14256, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China As Applied to Low-Value Imports*, 90 Fed. Reg. 17,608 (U.S. Customs & Border Protection Apr. 28, 2025).

7/      *See, e.g.,* CSMS # 63988468 - GUIDANCE: Additional Duties on Imports from China (Feb. 3, 2025); CSMS # 64297449 – GUIDANCE: Additional Duties on Imports from Canada (March 3, 2025); CSMS # 64649265 - GUIDANCE – Reciprocal Tariffs, April 5, 2025 Effective Date (Apr. 4, 2025); CSMS # 64687696 - UPDATED GUIDANCE – Reciprocal Tariffs on Goods of China, April 9, 2025, Effective Date (Apr. 8, 2025).

8.      The U.S. Supreme Court heard oral argument in *V.O.S. Selections* and a companion case arising out of the U.S. District of Columbia on November 5, 2025. 8/  The Supreme Court's decision is pending.

9.      This separate action is necessary because Plaintiffs have already paid IEEPA tariffs and are not assured of a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.  In particular, the Federal Circuit remanded to the CIT to decide "the propriety of granting injunctive relief and the proper scope of such relief".  *V.O.S. Selections*, 149 F.4th at 1340.  That issue, among others, remains undecided pending the Supreme Court's decision.

10.     This action is necessary now because Plaintiffs paid IEEPA tariffs on a number of entries that will begin to liquidate and thus the entries become final as a matter of law starting on December 15, 2025 (indeed, as of this filing, multiple entries have already liquidated).

11.     Plaintiffs seek relief through this action to preserve their rights to obtain complete refunds on (A) all IEEPA tariffs paid to date, and (B) all IEEPA tariffs that may be paid in the future.  To that end, Plaintiffs are considering filing a motion for a preliminary and/or permanent injunction against liquidation to preserve their rights to such refunds.

12.     Accordingly, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor, including the following relief, *inter alia*: (A) a declaration that the Challenged IEEPA Tariff Orders are unlawful; (B) a declaration that all IEEPA tariffs paid by Plaintiffs were collected *ultra vires*; (C) a declaration that Defendants' actions in implementing these tariffs lacked statutory authority in violation the Administrative Procedure Act ("APA"); (D) a

---

8/      *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).

declaration that Defendants' actions in implementing these tariffs were arbitrary and capricious in violation of the APA; and (E) a full monetary refund, inclusive of interest as authorized under law, from Defendants of all IEEPA tariffs Plaintiffs have paid to the United States as a result of the Challenged IEEPA Tariff Orders.

## <u>JURISDICTION</u>

13.    The CIT holds subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the CIT over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).  As the CIT held in its opinion in the *V.O.S. Selections* case:

> The Federal Circuit has confirmed that presidential action creates an appropriate basis for (i) jurisdiction, noting without disapproval that there are 'numerous cases in which the Court of International Trade has . . . considered challenges to the actions of the President pursuant to the grant of jurisdiction in § 1581(i).'…This means that Plaintiffs' various challenges to the presidential actions…successful or not, fall under the court's exclusive jurisdiction.

772 F. Supp. 3d at 1366-67 (citing *Humane Soc'y of United States v. Clinton*, 236 F.3d 1320, 1327 (Fed. Cir. 2001) (*citing*, *inter alia*, *Luggage & Leather Goods Mfrs. of Am., Inc. v. United States*, 588 F. Supp. 1413 (Fed. Cir. 1984) and *U.S. Cane Sugar Refiners' Ass'n v. Block*, 544 F. Supp. 883 (Fed. Cir. 1982).  The CIT has the same powers at law, in equity, and as conferred by statute as a United States district court.  28 U.S.C. § 1585.  Under 28 U.S.C. § 1581, in a civil action, the CIT can enter a money judgment against the United States and can order "any other form of relief that is appropriate in a civil action," including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition.  28 U.S.C. § 2643(a)(1), (c)(1).

## TIMELINESS OF THE ACTION

14.    Plaintiffs commenced this action by filing a summons and complaint with this Court on December 17, 2025.  This action has been commenced within two years of the challenged actions of Defendants, thereby satisfying the timeliness requirement of 19 U.S.C. § 1621.

## PARTIES

15.    Canadian Solar Inc. is a globally integrated solar company legally domiciled and incorporated in Canada; registered under the laws of the Province of Ontario, Canada; and maintaining its principal executive office and place of business in Guelph, Ontario, Canada. Its indirectly wholly-owned subsidiaries Plaintiffs Canadian Solar (USA) Inc., Canadian Solar SSES (US) Inc., Canadian Solar US Module Manufacturing Corporation, and Canadian Solar US Cell Manufacturing Corporation import energy-related products into the United States.  Plaintiffs act as importers of record and are responsible for payment of duties and import fees.

16.    Defendant United States of America is the federal government of the United States of America.

17.    Defendant Department of Homeland Security ("DHS") is an agency of the United States federal government.

18.    Defendant Kristi Noem is the Secretary of DHS.  She is sued in her official capacity.

19.    Defendant United States Customs and Border Protection ("CBP") is an agency in the DHS and is headquartered in Washington, D.C.  CBP is responsible, among other functions, for border security and the collection of tariffs, duties, and taxes on goods imported into the United States.

20.    Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

21.     Defendant Office of the United States Trade Representative is the federal agency primarily responsible for developing U.S. trade policy.

22.     Defendant Jamieson Greer is the United States Trade Representative and is sued in his official capacity.

23.     Defendant Department of the Treasury is the federal agency primarily responsible for the national fisc and is where the revenue from the challenged actions is deposited.

24.     Defendant Scott Bessent is the Secretary of the Treasury and is sued in his official capacity.

## STANDING

25.     To establish a standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). Plaintiffs are harmed by the Challenged IEEPA Tariff Orders because Plaintiffs are the importers of record for articles imported into the United States from countries subject to the unlawful IEEPA tariffs as implemented and collected by Defendants. As a result of the Executive Orders challenged by this lawsuit, Plaintiffs have paid—and continue to pay—IEEPA tariffs to the United States and have suffered attendant injury. *E.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiffs, the plaintiffs have suffered a concrete injury in fact under Article III."); *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 599 (2007) ("being forced to pay" money to the government "causes a real and immediate economic injury"). Declaratory and injunctive relief from this Court would redress those injuries.

26.     As of the date of this complaint, Plaintiffs have paid significant IEEPA tariffs imposed by the Challenged IEEPA Tariff Orders and, as a result, have suffered economic injury. Plaintiffs thus have standing to bring this lawsuit.

## GOVERNING LAW

27.     IEEPA, 50 U.S.C. § 1702(a)(1)(B), provides that the President may:

> investigate, block during the pendency of any investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . .

28.     IEEPA further provides that these actions "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for the purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

29.     The text of IEEPA does not employ the word "tariff" or any term of equivalent meaning.

30.     Section 605 of the Trade Act of 1974 provides that "[t]he President shall from time to time, as appropriate, embody in the HTSUS the substance of the relevant provisions of this chapter, and of other Acts affecting import treatment, and actions thereunder, including removal, modification, continuance, or imposition of any rate or duty or other import restriction." 19 U.S.C. § 2483.

31.     The National Emergencies Act, 50 U.S.C. § 1601 et seq. (the "NEA"), provides the general framework for declarations of national emergencies. The NEA requires that "[w]hen the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised unless and until the President specifies the provisions of law under which he proposes that he, or other officers will act." 50 U.S.C. § 1631.

32.    The President may "confiscate" the property of a foreign person or country that also is subject to U.S. jurisdiction only when the United States is engaged in "armed hostilities" or has been attacked by a foreign country.  50 U.S.C. § 1702(a)(1)(C).

## STATEMENT OF FACTS

### I.    PRESIDENT TRUMP ORDERS A SERIES OF TARIFFS, INVOKING IEEPA

33.    On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on articles imported from Canada, Mexico, and China.  The tariffs are in addition to the ordinary customs duties previously imposed on articles imported from these three substantial U.S. trading partners.

34.    Each Executive Order invokes IEEPA as authorizing the tariffs and proclaimed national emergencies to justify IEEPA's use.  Collectively, these Executive Orders are referred to in this complaint as the "Trafficking Tariff Orders."

35.    The Executive Order directed at Canada, Executive Order 14193 of February 1, 2025, Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Tariff Order"), declared an emergency based on alleged opioid and human trafficking.  Executive Order 14193 imposes a 25% *ad valorem* tariff on certain articles from Canada, with certain exceptions.

36.    The Executive Order directed at China, Executive Order 14195 of February 1, 2025, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7. 2025)  ("China Tariff Order"), also declared an emergency based on alleged opioid trafficking, determining that "the sustained influx of synthetic opioids" is a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce."  *Id.* at 9,121.  The

President's claim of emergency power in Executive Order 14195 was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.* Executive Order 14195 imposed an additional 10% *ad valorem* tariff on articles from China imported into the United States. *Id.*

37.    On February 5, 2025, the President issued Executive Order 14200 of February 5, 2025, Amendment to Duties Addressing the Synthetic Opioid Supply chain in the People's Republic of China, 90 Fed. Reg. 9,277 (Feb. 11, 2025) ("February 5 Amendment").

38.    On March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228 of March 3, 2025, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by stating that "the PRC has not taken adequate steps to alleviate the illicit drug crisis." *Id.* at 11,463.

39.    On April 2, 2025, citing U.S. trade deficits with its trading partners as a national emergency, President Trump issued Executive Order 14257 of April 2, 2025, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7. 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% *ad valorem* baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at 15,041. These higher country-specific tariffs range from 11% to 50% *ad valorem.* *Id.*

40.    The Reciprocal Tariff Order states that "U.S. trading partners' economic policies. . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.*

41.    On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on imports from China by 50 percentage points—from 34% to 84% *ad valorem.*  Executive Order No. 14,259 of April 8, 2025, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

42.    The next day, April 9, 2025, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125% *ad valorem.*  Executive Order No. 14266 of April 9, 2025, Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 15, 2025).  Meanwhile, the 20% *ad valorem* trafficking tariff on imported articles from China remained in place, such that most imports from China faced an IEEPA tariff of at least 145% *ad valorem.*

43.    In implementing this Executive Order-based tariff regime, Defendants administered changes to the HTSUS, requiring that goods subject to the challenged IEEPA tariffs be entered under new tariff codes.

44.    On April 14, 2025, several companies filed an action in the CIT challenging the legality of certain Executive Orders promulgated pursuant to IEEPA.  *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2).  The CIT held that the Challenged IEEPA Tariff Orders are unlawful.  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).  The Federal Circuit, sitting *en banc*, affirmed.  *V.O.S. Selections, Inc. v. Trump*, 149

F.4th 1312, 1334 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

45. Plaintiffs contest the Challenged IEEPA Tariff Orders, which affect the tariff rates on articles imported from the countries with which Plaintiffs do business and for which Plaintiffs pay tariffs (thus causing Plaintiffs injury).

## II. CBP IMPLEMENTS THE UNLAWFUL TARIFFS

46. CBP is charged with the assessment and collection of import charges, tariffs, and duties, including the IEEPA tariffs. 19 U.S.C. §§ 1500, 1502; 6 U.S.C. § 212.

47. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted a new tariff nomenclature: the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, and its subheadings provide particularized divisions of the goods within each category. *Id.*

48. The Challenged IEEPA Tariff Orders are effectuated through Chapter 99 of the HTSUS. Chapter 99 of the HTSUS includes various provisions established based on "temporary legislation" and "temporary modifications established pursuant to trade legislation," among other provisions. HTSUS, USITC Pub No. 5684 at Chapter 99 (Nov. 2025). The provisions of Chapter 99 effectuating the Challenged IEEPA Tariff Orders require U.S. importers to declare their entries as subject to the tariffs and dictate the applicable tariff rates. As noted above, the Challenged IEEPA Tariff Orders established many new additional dutiable "secondary" subheading provisions under Subchapter III of Chapter 99 of the HTSUS including, but not limited

to, subheadings 9903.01.01, 9903.01.20, 9903.01.24, 9903.01.25, 9903.01.49, 9903.01.55, 9903.01.58, 9903.01.63, 9903.01.72, 9903.01.77, 9903.01.84, 9903.02.05, 9903.02.09, 9903.02.11, 9903.02.14, 9903.02.17, 9903.02.20, 9903.02.26, 9903.02.27, 9903.02.31, 9903.02.33, 9903.02.39, 9903.02.47, 9903.02.51, 9903.02.53, 9903.02.55, 9903.02.56, 9903.02.57, 9903.02.60, 9903.02.61, 9903.02.63, 9903.02.66, and 9903.02.69.

49.    CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS.  19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

50.    The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders.  19 U.S.C. §§ 1202, 3005, 3006; *see Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

51.    When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS.  19 U.S.C. §§ 1202, 1500, 1502.

## III.    THE CIT AND THE CAFC HAVE HELD THAT THE IEEPA DOES NOT AUTHORIZE THE CHALLENGED TARIFFS

52.    The Challenged IEEPA Tariff Orders claim authority solely from the following laws: (A) IEEPA, 50 U.S.C. § 1701 et seq.; (B) the National Emergencies Act, 50 U.S.C. § 1601 et seq.; (C) section 604 of the Trade Act of 1974, as amended; (D) 19 U.S.C. § 2483; and (E) 3 U.S.C. § 301.

53.    On May 28, 2025, a three-judge panel of the CIT granted summary judgment to the plaintiffs in *V.O.S. Selections* and the plaintiffs in *Oregon, et al.* and permanently enjoined the government from enforcing the IEEPA tariffs at issue in that case.  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).  That decision was appealed to the U.S. Court of Appeals for the Federal Circuit.

54.    The Federal Circuit stayed enforcement of the CIT's decision and injunction and ordered an expedited briefing schedule and hearing.  Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming the CIT's decision that the IEEPA tariffs are unlawful.  *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

55.    In a separate lawsuit filed by a distinct group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort.  *See Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), cert. granted before judgment, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025).  That decision was appealed to the U.S. Court of Appeals for the D.C. Circuit.  Prior to the D.C. Circuit holding argument, however, the U.S. Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.  The cases were consolidated, with argument on November 5, 2025.

## IV.    PLAINTIFFS HAVE PAID IEEPA TARIFFS ON ENTRIES THAT WILL SOON LIQUIDATE

56.    "Liquidation" means "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1.

57.    Typically, when goods enter the United States (*i.e.*, when they are imported), the U.S. importer of record pays an estimated duty on the entry based on its customs declaration, which

asserts a value, origin and HTSUS classification for the imported goods.  *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

58.    CBP then fixes the final appraisement of merchandise by confirming the final value, classification, tariff and duty rates, and final amounts of tariffs and duties for the imported goods. 19 U.S.C. § 1500.

59.    Once the final amount of tariffs and/or duties is determined, CBP "liquidates" the entry and notifies the importer of record as to whether it owes more money or is entitled to a refund.  19 U.S.C. § 1504(b).  It is not until the entries liquidate that the duties are deposited into the U.S. Treasury.

60.    Liquidation—unless extended—must happen within one year of the date of entry or the entry will liquidate automatically by operation of law.  19 U.S.C. § 1504(a).  CBP typically liquidates entries 314 days after the date of entry of the goods and will usually post a notice of liquidation on its website.

61.    Once liquidation has occurred, an importer of record has 180 days to file a protest contesting an adverse CBP determination relating to that liquidation with which the importer disagrees.  19 U.S.C. § 1514(a). 9/  Not all decisions that culminate at liquidation, however, are able to be protested.  For example, CBP's imposition of that tariff (or duty) cannot be protested where CBP acts in a ministerial capacity (i.e., without discretion) in imposing a tariff (or duty). *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024) ("[T]his court has consistently held that 'merely ministerial' actions are not protestable under [section] 1514.'  This is because unlike typical § 1514(a) decisions that involve substantive determinations, Customs

---

9/    CBP also may voluntarily reliquidate entries within 90 days of liquidation.  19 U.S.C. § 1501.

lacks discretion when 'merely follow{ing} { }instructions.'" (quoting *Mitsubishi Elec. Am., Inc. v. United States*, 44 F.3d 973, 976-77 (Fed. Cir. 1994)).

62.     The CIT and the Federal Circuit have both cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful.  *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

63.     As of the date of this complaint, Plaintiffs have paid significant IEEPA tariffs imposed by the Challenged IEEPA Tariff Orders.  These tariffs arise out of Plaintiffs' imports from several different countries.

64.     Plaintiffs continue to be required to pay IEEPA tariffs on their entries.

65.     Entries for which Plaintiffs paid IEEPA tariffs imposed by the Challenged Tariff Orders are scheduled to begin liquidating on or after December 15, 2025, although as of this filing multiple entries have already liquidated.

## STATEMENT OF CLAIMS

### COUNT ONE

**The International Emergency Economic Powers Act, 50 U.S.C. § 1701 et. seq. does not provide a lawful basis for the tariffs imposed under the Challenged IEEPA Tariff Orders**

66.     Paragraphs 1 through 65 are incorporated by reference.

67.     The CIT, in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), held that the President exceeded his authority under the IEEPA, 50 U.S.C. § 1701 et. seq., when he imposed tariffs on imported goods.

68.     As the CIT explained in *V.O.S. Selections*, the IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency.

The IEEPA does not authorize the imposition of tariffs or duties on imports.  Moreover, neither the text of the IEEPA nor its legislative history contains a clear delegation to the President to set tariff rates.  The CIT concluded: "The Worldwide and Retaliatory Tariff Orders exceed any authority granted to the President by IEEPA to regulate importation by means of tariffs.  The Trafficking Tariffs fail because they do not deal with the threats set forth in those orders." *V.O.S. Selections, Inc.*, 772 F. Supp. 3d at 1383.

69.    The Federal Circuit affirmed, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA.  *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). Contrasting the IEEPA to various other statutes that give the President the authority to impose tariffs, the Federal Circuit observed that the IEEPA never says "tariffs" or any other similar word. The IEEPA does give the President the power to "regulate" imports, but the power to "regulate" has long been understood as distinct from the power to "tax."  Tariffs are taxes on imports.  Thus, "regulate" does not encompass the power to impose tariffs.

70.    Furthermore, the Federal Circuit determined that the major questions doctrine counseled against construing IEEPA as providing the President with the unfettered power to impose tariffs.  "Courts expect Congress to speak clearly if Congress wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (cleaned up) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President.  *Biden v. Nebraska*, 600 U.S. 477, 505-06 (2023).  By any objective measure, the Challenged IEEPA Tariff Orders are "of vast economic and political significance," as they amount to by far the largest tariffs in U.S. history

and impact every industry, sector, and corner of the American economy.  The IEEPA does not clearly authorize the President to set tariffs—indeed, the text of the IEEPA statute does not mention the word "tariff" or any synonym for "tariff."  Moreover, the IEEPA is not located in the same title of the U.S. Code as the other trade laws (Title 19).  As such, the Challenged IEEPA Tariff Orders are unlawful, and Defendants are not authorized to implement and collect the IEEPA tariffs.

71.    The Challenged IEEPA Tariff Orders are the same as those struck down in *V.O.S. Selections*.  For the same reasons set forth in *V.O.S. Selections* and in the Federal Circuit's affirmance, the Challenged IEEPA Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio*, and without effect as applied to Plaintiffs.

72.    Plaintiffs respectfully request that this Court apply its precedent and the decision of the Federal Circuit, declare the Challenged IEEPA Tariff Orders unlawful as to Plaintiffs, enjoin Defendants from enforcing them as to Plaintiffs, and order refunds of all IEEPA duties collected from Plaintiffs, with interest as provided by law.

## COUNT TWO

### The Challenged IEEPA Tariff Orders are unlawful under the U.S. Constitution, Art. I and the Non-Delegation Doctrine

73.    Paragraphs 1 through 72 are incorporated by reference.

74.    If this Court were to construe IEEPA as authorizing tariffs, the Challenged IEEPA Tariff Orders must nevertheless be held unlawful because such a reading would render the IEEPA an impermissible delegation of legislative power in violation of the U.S. Constitution.

75.    The U.S. Constitution provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…"  U.S. CONST. art. I § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations."  *Id.*, cl. 3 ("Commerce Clause").

76.    Tariffs are a tax on imports that fall within the Taxing and Commerce Clauses.

77.    The U.S. Supreme Court requires that any grant of regulatory authority be provided with an "intelligible principle" that will form the basis of agency action.  *E.g.*, *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935); *Panama Refining Co. v. Ryan*, 203 U.S. 388, 430 (1935).  Delegations of the power to tax are unconstitutional unless Congress provides "a floor and a ceiling."  *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025).  The IEEPA never mentions tariffs or any other taxing authority, and it sets neither ceiling nor floor.  Thus, if the IEEPA were interpreted to permit the Challenged IEEPA Tariff Orders, that delegation would lack an intelligible principle and serve as an unbounded delegation of legislative power.

78.    The District Court in *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), held that interpreting the IEEPA to permit the President to impose broad import tariffs would violate Article I, § 1 and § 8 of the U.S. Constitution, which vest in Congress the power to "lay and collect . . . Duties."

79.    Accordingly, even assuming the IEEPA could be construed to permit the Challenged IEEPA Tariff Orders, that delegation would lack an intelligible principle and would therefore be unconstitutional.  On that basis, the Challenged IEEPA Tariff Orders are unlawful.

80.    Plaintiffs respectfully request that this Court declare the Challenged IEEPA Tariff Orders as unlawful as to Plaintiffs, enjoin Defendants from enforcing them as to Plaintiffs, and order the refund of all IEEPA duties collected from Plaintiffs, with interest as provided by law.

## COUNT THREE

**Defendants' implementation of the Challenged IEEPA Tariff Orders lacks statutory authority in violation of the Administrative Procedure Act**

81.    Paragraphs 1 through 80 are incorporated by reference.

82.     The Administrative Procedure Act ("APA") directs courts to "hold unlawful and set aside agency action" that is, among other things, "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).

83.     Defendants' actions implementing the Challenged IEEPA Tariff Orders, including by modifying the HTSUS and through CSMS Guidance, are "final" agency actions under the APA because they change the tariff rates charged at importation, determining legal obligations and setting legal consequences.  *See* 5 U.S.C. § 702; *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).

84.     Defendants' actions implementing the Challenged IEEPA Tariff Orders lack statutory authorization, are contrary to constitutional right, and are arbitrary and capricious for the reasons pleaded above.  Accordingly, they violate the APA.

85.     These actions, which include the HTSUS modifications, violate the APA and are thus unlawful.  As such, they must be vacated and set aside.

86.     Defendants' APA violations have caused and will cause irreparable harm to Plaintiffs.

87.     Plaintiffs respectfully request that the CIT apply its precedent and the decision of the Federal Circuit, declare the Challenged IEEPA Tariff Orders unlawful as to Plaintiffs, enjoin Defendants from enforcing them as to Plaintiffs, and order refunds of all IEEPA duties collected from Plaintiffs, with interest as provided by law.

## COUNT FOUR

## DECLARATORY RELIEF, 28 U.S.C. § 2201

88.     Paragraphs 1 through 87 are incorporated by reference.

89.    Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration."  28 U.S.C. § 2201(a).

90.    Plaintiffs' claims present an actual controversy as to the President's authority under the IEEPA, the constitutionality of the IEEPA, and the authority of Defendants to implement and collect the resulting tariffs.

91.    Plaintiffs are importers of record and have suffered injury by having been required to pay IEEPA tariffs as a result of the Challenged IEEPA Tariff Orders on articles they have imported into the United States from several different countries, including, but not limited to, Canada, China, Thailand, Vietnam, and others.

92.    This Court can exercise its equitable power to enter a declaratory judgment that the Challenged IEEPA Tariff Orders are unlawful for any of the above reasons, and that Defendants lack authority to implement and collect the resulting tariffs, as to Plaintiffs.  It should do so.

*        *        *

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

(1)    declare that the Defendants lack the authority under IEEPA to impose tariffs;

(2)    declare that the Challenged IEEPA Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiffs;

(3)    declare that, with respect to Plaintiffs, Defendants lack authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged IEEPA Tariff Orders;

(4)    with respect to Plaintiffs, permanently enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged IEEPA Tariff Orders;

(5)    order the United States to refund to Plaintiffs the IEEPA duties collected on those entries, with interest as provided by law;

(6)    award Plaintiffs their reasonable costs, including attorney's fees, incurred in bringing this action; and

(7)    grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Jonathan T. Stoel

Katherine B. Wellington
HOGAN LOVELLS US LLP
125 High Street
Suite 2010
Boston, MA 02110
(617) 702-7745
katherine.wellington@hoganlovells.com

Jonathan T. Stoel
Craig A. Lewis
Mayur Patel
Jared R. Wessel
Joshua E. Kurland
Michael G. Jacobson
Nicholas R. Sparks
Nicholas W. Laneville
Emma T. Hunter
Maria A. Arboleda
Lindsay K. Brown
Gregory Hawkins

HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634
jonathan.stoel@hoganlovells.com

*Counsel to Canadian Solar (USA) Inc.; Canadian Solar SSES (US) Inc.; Canadian Solar US Module Manufacturing Corporation; and Canadian Solar US Cell Manufacturing Corporation*

Dated: December 17, 2025